**Lewis H. HOORT, Jr., Appellee,**

v.

**OKLAHOMA TRUCK PARTS, INC., an Oklahoma corporation, d/b/a Freck's Truck Parts, Appellant.**

No. 54277.

Court of Appeals of Oklahoma, Division No. 2.

Oct. 13, 1981.

Rehearing Denied July 28, 1982.

Released for Publication by Order of Court of Appeals Aug. 27, 1982.

William R. Berger, Redlands, Cal., for appellee.

Gary A. Rife, Kenneth R. Farley, Legal Intern, Norman, for appellant.

BOYDSTON, Judge.

Appeal is by auto parts store from a $4,393.76 jury verdict in favor of Customer who sued Store on theory of breach of warranty. Suit involved a rebuilt truck part which we will refer to as a transmission drive train "gear-case."

Store raises the following issues on appeal:

(1) Whether Oklahoma law provides for implied warranty on used or rebuilt goods;

(2) Whether finding by jury of express warranty was against the clear weight of the evidence; and

(3) Whether the jury awarded excessive damages.

We have reviewed the record, find competent evidence to support the jury verdict generally, reverse in part as to damages and affirm the judgment in all other respects.

## I

The facts are not seriously contested. Plaintiff Customer testified his dump truck broke down in June, 1977. Repair required replacement of the drive train gear-case assembly. The part was not available in Tulsa but Customer located a rebuilt one at defendant auto parts store in Moore, Oklahoma. He testified he talked with the store

manager, McElhaney, and agreed to purchase it for $850. It was represented as a rebuilt assembly.[1]

When he picked up the gear-case it was still partially disassembled and he noticed certain parts were exposed, particularly new bearings and other parts which also appeared to be new. Store is part of a salvage shop and Customer was shown through the rework shop where other parts were being repaired, reworked and prepared for resale. He paid for the part and took it back to Tulsa where it was installed. Four months later the same part malfunctioned. He called Store, demanded a refund which was refused, and this suit was filed.

Customer called as a witness the Crager G. M. C. mechanic who had diagnosed and repaired the original problem first in June, 1977, and again in October. His testimony clearly established that the rebuilt gear-case had been defectively assembled. He cited several obvious mechanical malpractices and also established the reasonable time required to repair the truck.

Mechanic's testimony went unrebutted, as did Customer's testimony regarding consequential damages (lost revenue) and that the store manager had expressly warranted the part. In fact, Store rested without calling witnesses, standing on its demurrer.

## II

■ In a case of legal cognizance, a jury verdict will not be disturbed where there is competent evidence to support the judgment. *Pennsylvania Glass Sand Corp. of Okla. v. Ozment*, Okl., 434 P.2d 893 (1967). The jury heard uncontroverted evidence that store manager expressly warranted the gear-box. Manager testified he did not remember whether he had though it was not an unusual practice to warrant parts for only 30 days. The receipt made no reference whatsoever to warranty.

■ Store argues the Uniform Commercial Code does not provide warranty for used goods. We find the Code makes no distinction between used or new goods. 12A O.S.1971 § 2–105(1). We therefore hold the merchant is bound to an implied warranty of merchantability reasonably appropriate to the particular goods sold. The term of the implied warranty is construed to be "a reasonable time" and is subject to proof.

As we view the facts, there was no proof the gear-box was "used" within the meaning of the four goods classifications (new, remanufactured, rebuilt and used) as defined by both the evidence and our common understanding of the terms. Each class, except "new," has been "used" to some extent, and, to limit the term "used" to its common meaning is to ignore its clear use in this case as a term of trade.

■ We define "used goods" to be goods which have been used by a consumer and are offered for resale without express or implied representation of material alteration, repair, rework or extension of their ordinary useful life expectancy.[2] Under these facts, we conclude the subject gearbox was, at minimum, "rebuilt" and falls within the ambit of warranty of merchantability rules.

■ On the other hand, Customer was expressly told the gear-case was "rebuilt,"

1. Customer developed at trial that there are only four types of parts: new, used, rebuilt and remanufactured. The only essential difference in reliability and life expectancy between rebuilt and remanufactured parts seems to be, according to the evidence, that remanufactured parts are warranted to perform like new and the work is done either by or under authority of the original manufacturer. A rebuilt part is inspected for worn/defective parts, usually by local shops, and these are replaced. There appears to be no substantial difference between the two classifications save for the reliability and integrity of the reworker.. However, this slight distinction is obviously reflected in the prices.

2. *See* 12A O.S.1971 §§ 2–316(2, 3); *Smith v. Sharpenstien*, Okl., 521 P.2d 394 (1974).

he personally saw some of the internal parts had been replaced with new ones and the external case had been cleaned and painted, after the fashion of rebuilders. There was no conspicuous warranty disclaimer on the receipt to alert Customer it was "used" nor was there an inordinate disparity in price which one would expect from an unwarranted part.

■ We therefore hold the trial court correctly submitted the case to the jury on theories of express and implied warranty.

### III

Regarding damages, the record does not fully support the verdict. We have gleaned these itemized damages from the briefs, instructions and petition:

| | |
|---|---|
| original cost of gear-case | $ 884.00 |
| loss of use or profits | 1,855.00 |
| cost of repair and replacement of faulty part | 1,739.76 |
| total damages claimed in brief and petition | $4,478.76 |

Trial court instructed the jury:

> [y]ou are instructed that the measure of damages . . . is the difference between the contract price and the fair market value of the item sold . . . the reasonable expense of removing and installing the part, and the reasonable loss of profits for the period of time that it would reasonably take to remove the old part and install the new part in an amount not to exceed $4,478.76.

The instructed maximum recovery is the same sum as the itemized damages in the brief and petition. This leads us to believe the court assigned the same constituent values to the elements of damage. This being true we come to the conclusion the jury was improperly instructed.[3]

■ Even though the instruction properly informed the jury as to the legal measure of Customer's recovery, it incorrectly per-

mitted reimbursement for both the original cost of the part and its replacement cost which is included in the $1,739.76. Customer cannot recover twice for the same defective part.

Customer's proof was further lacking regarding lost profits. He proved it required seven working days to repair the truck. During this time he lost gross receipts on the truck of "[a] low of $200 . . . and a high of $400." No evidence was offered to prove the reasonable rental value of the truck or account for operating costs. We know of no other way to arrive at lost profits. The amount assigned this damage item is $1,855 which averages $265 per day and is well within the testimony; however, it is patently speculative unless coupled with an expense accounting. *Weleetka Light & Water Co. v. Northrop*, 42 Okl. 561, 140 P. 1140 (1914).

### IV

■ Customer, as prevailing party, was entitled to a reasonable attorney fee. 12 O.S.1971 § 936. However, the jury verdict was appealed without motion for new trial. Immediately after trial, Customer filed motion for assessment of costs and attorney fees which was never taken up by the trial court. Under these circumstances, we believe the trial court should have ruled on the motion, and all such properly pending motions, notwithstanding the appeal. Assessment of costs and attorney fees after verdict are routine post-verdict matters which must be resolved by the trial court regardless of whether appealing party has elected to lodge appeal without motion for new trial. We therefore refer the pending motion to trial court for disposition along with the issue of damages.

Judgment is affirmed on all issues except damages. The proper measure of damages under the pleadings and evidence in this case is the cost of replacement (parts plus

---

**3.** Trial court reserved ruling until trial on the punitive damages issue. Though there is no record evidence it appears to have been resolved against Customer.

labor), plus loss of use (average lost gross income less operating expenses).

The case is remanded to district court with instructions to direct a verdict for $1,739.76, representing the cost of repair and replacement of the faulty part as proven at trial. The court is further directed to retry the issue of damages relative to lost profits and determine the amount of attorney fee and costs due Customer, incurred up to and including trial. Costs of this appeal are assessed against Customer. Customer's motion for attorney fee on appeal is denied; Customer to receive no additional attorney fee for re-trial of damages issue.

BACON, P. J., and BRIGHTMIRE, J., concur.